# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

REMY ENTERPRISE GROUP, LLC, *et al.*

    Plaintiffs,

v.

FREDERICK DAVIS, *et al.*

    Defendants.

Civil Action No. 13-461 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

This tort action stems from an incident between one of the plaintiffs, Makini Chaka ("Chaka"), and one[1] of the defendants, Frederick Davis, that occurred in a Washington, D.C. nightclub in January 2011. Pending before the Court is Defendant Davis' Motion to Dismiss the Amended Complaint, ECF No. 14, on the grounds of *res judicata*, statute of limitations, and failure to state a claim upon which relief can be granted.[2] Since the Court finds the claims in the instant matter could have been raised in a separate Washington, D.C. Superior Court action between the instant parties that has proceeded to judgment, Defendant Davis' motion is granted.

## I. BACKGROUND

Defendant Davis argues that all of the claims set forth in the instant matter could have been raised in a suit filed by Plaintiff Chaka against Defendant Davis in D.C. Superior Court. *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 2, ECF No. 14-1. It is therefore helpful

---

[1] The plaintiffs' Amended Complaint, ECF No. 12, which is the operative complaint in this action, names, in addition to Defendant Davis, "one or more John Does" as defendants, but the plaintiffs have not moved to amend their pleading to name any of the unnamed defendants, nor have they served the Amended Complaint on any defendants other than Davis.

[2] As part of his Motion to Dismiss, the defendant requested a hearing. Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 19, ECF No. 14-1. In light of the ample briefing provided by the parties, the request is denied. *See* LCvR 7(f).

1

to first describe the events on which both suits are based, before discussing the D.C. Superior Court case and the instant matter.

## A. The Events In Question

Plaintiff Chaka is the sole member of Plaintiff Remy Enterprise Group, LLC ("Remy"), which "engages in the business of arranging celebrity appearances at public and private events." Am. Compl. ¶¶ 3–4.[3] The plaintiffs' business model is predicated upon receiving portions of the appearance fees generated by the plaintiffs' clients, who are primarily professional athletes and entertainers. *See id.* ¶ 7. Plaintiff Chaka and Defendant Davis met in 2008 and occasionally attended events together until January 2010, when the two ceased speaking with each other. *See id.* ¶¶ 8–9, 12.

In January 2011, Plaintiff Chaka and Defendant Davis encountered each other at a Washington, D.C. nightclub. *Id.* ¶ 12. During the encounter, Plaintiff Chaka threw the contents of her drink into Defendant Davis' face after he grabbed her wrist. Findings of Fact, Conclusions of Law, and Order ("FOF") ¶ 9, *Chaka v. Davis,* D.C. Super. Ct. Case No. 2011 CA 190 B, ECF No. 17-1.[4] Defendant Davis subsequently emptied a carafe of juice on Plaintiff Chaka's face and head and threw the carafe at Plaintiff Chaka, hitting her in the face. *Id.* ¶¶ 10–11. Plaintiff Chaka "suffered a cut and bruise to her lip from the impact of the carafe." *Id.* ¶ 12. Plaintiff Chaka "reported the incident to the police." Am. Compl. ¶ 12.

Plaintiff Chaka "cancelled 'somewhere between 8 to 10' contracts [for appearances with her clients] immediately following the incident," purportedly because her "'face was still

---

[3] For the purposes of a motion to dismiss, the facts in the plaintiffs' Amended Complaint are taken as true. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[4] A court may take "judicial notice of facts on the public record" in other proceedings, *Covad Comm's Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005), and the Findings of Fact in the D.C. Superior Court action were filed with this Court by the plaintiffs as an exhibit to the plaintiffs' Supplemental Memorandum in Opposition to the Defendant's Motion to Dismiss, ECF No. 17.

swollen,' . . . [meaning] she 'could not be out in public with'" her clients. FOF ¶¶ 17–18. The plaintiffs allege that immediately after the incident, "in January or February of 2011," Defendant Davis "began attacking [Plaintiff] Chaka's character," by stating she "and her business, [Plaintiff] Remy, were engaged in the business of procuring prostitutes for professional athletes." Am. Compl. ¶ 14. The plaintiffs deny the veracity of these statements. *Id.* ¶ 15. As a result of the "viral dissemination of the misinformation" allegedly stated by Defendant Davis to others, "tens of thousands of sports and celebrity-news enthusiasts" learned of the incident between 2011 and 2013. *See id.* ¶¶ 16–17. The plaintiffs allege that these statements caused them to "be held up to public ridicule and contempt, and deterred others from associating with them." *Id.* ¶ 20. The plaintiffs allege that as a result of these statements, the plaintiffs lost more than half their income. *See id.*

The plaintiffs further allege that in December 2012, Defendant Davis made comments to two nightclub promoters that caused the promoters to keep Plaintiff Chaka out of an event she had planned with a client. *Id.* ¶ 34. The plaintiffs allege that these comments resulted in the loss of payment for the December 2012 event, for which the plaintiffs were to be paid $1,000, and damaged the plaintiffs' ability to plan future events. *Id.*

### B. The D.C. Superior Court Action

Plaintiff Chaka "filed a *pro se* Complaint on January 10, 2011, alleging claims for 'harassment' and 'personal injury'" but "at trial, Plaintiff [Chaka] proceeded solely on the tort of assault, and withdrew the harassment claim with prejudice." FOF at 1. The plaintiffs state that Plaintiff Chaka obtained a preliminary injunction "restraining [Defendant] Davis from [Plaintiff Chaka's] immediate presence" on February 11, 2011. Am. Compl. ¶ 12. Plaintiff Chaka sought damages consisting of medical expenses, compensatory damages, lost wages, damages for "pain

and suffering, emotional distress, and inconvenience," punitive damages, and a permanent injunction to keep Defendant Davis from contacting her. *See* FOF at 9–15. A bench trial was held on March 11, 2013. FOF at 1.

Although the D.C. Superior Court suit ostensibly concerned only the alleged assault at the nightclub, during the bench trial, Plaintiff Chaka testified at length about the events that occurred in the days and weeks that followed. Plaintiff Chaka discussed media coverage of the incident in the following days, noting she had seen "[p]robably over 100 articles" about the incident, many of which mentioned her. *See* Def.'s Mem. Ex. B (*Chaka v. Davis,* D.C. Super. Ct. Case No. 2011 CA 190 B, Trial Tr.) ("Tr.")[5] at 39:8-14, ECF No. 14-4. She testified that her reputation had been damaged by the incident and the resulting media coverage, which caused her to become depressed. *See id.* at 39:15–40:13; *see also* Tr. at 69:8-12, ECF No. 14-5 ("For quite some time, I could not eat. I could not sleep. I was just looked upon as this bad person. Like I can't even Google my name now without feeling some type of way because my whole reputation is just slandered."). Her testimony included allegations that she had been "labeled . . . as a pimp" and "as a madam." Tr. at 41:7-8, ECF No. 14-4. Additionally, she testified that she felt her privacy had been violated by the media coverage surrounding the event and her reputation had been harmed by statements Defendant Davis made to the media. *Id.* at 42:1–44:7.

Regarding her business, Plaintiff Chaka testified that "[r]ight after the incident happened and hit the news, [she] had to cancel several contracts at that time." *Id.* at 48:5-7. According to Plaintiff Chaka, the media coverage caused "[a] lot of nightclubs . . . not [to] want to do business with [her] anymore at that point because of the incident that happened. They were afraid –

---

[5] Due to its length, the transcript from the bench trial was filed in six parts as exhibits to Defendant Davis' Motion to Dismiss the Amended Complaint. *See* Def.'s Mem. Ex. B Parts 1-6, ECF Nos. 14-4, 14-5, 14-6, 14-7, 14-8, 14-9. References to the transcript will be identified by ECF number as well as by page and line number where the relevant testimony is located.

because [the nightclub where the incident occurred] was on the news, they did not want to be the next – quote/unquote – club on the news for any issues or anything that was going on." *Id.* at 48:12-17.

Plaintiff Chaka testified that after the 2011-2012 football season ended, she "was unable to work for quite some time," and that when she "started showing up with [her] regular girlfriends at clubs, not doing any business at all, [club owners] were saying that [she] was soliciting prostitution because [Defendant Davis] was telling club owners that [she] was a pimp and [she] was just coming out with prostitutes." *Id.* at 48:17-25; Tr. at 49:1, ECF No. 14-5. Plaintiff Chaka's counsel asked her to describe the impact of the incident and resulting media coverage on her business from the time of the incident to the time of the trial. *See* Tr. at 49:12-14, ECF No. 14-5. Plaintiff Chaka responded that she "lost every single client" she had, "was just laughed at for quite some time," and "had to start over." *Id.* at 49:15-25. She also testified that she believed Defendant Davis "essentially ruined my entire business through media, through word of mouth, through everything." *Id.* at 51:9-10.[6]

During closing arguments, Plaintiff Chaka's counsel admitted that the D.C. Superior Court had heard testimony about Defendant Davis and "his associates' efforts to slander, libel or tortuously interfere with [Plaintiff] Chaka's contacts," but stated those claims were "not the subject of this suit. This suit is about the personal injury alone." Tr. at 233:18-25, ECF No. 14-8. Plaintiff Chaka's counsel specifically argued that "whether [Defendant] Davis told the media [about the incident] or not, [Plaintiff Chaka] was on every blog, every news station that wanted to cover this story the next day. Her privacy that she holds so dear was eliminated. And we're not asking for the Court to assign fault for that to [Defendant] Davis for what the media did. But

---

[6] The judge in the Superior Court action overruled Plaintiff Chaka's objection to a defense question regarding the impact of the incident on Plaintiff Chaka's business in the face of the plaintiff's "long claim of damages about business and [the] impact to business" due to Defendant Davis' alleged actions. *See* Tr. at 87:10-18.

5

it certainly goes to [Plaintiff Chaka's] emotional distress and to the punitive damages that should be imposed in this case." *Id.* at 234:8-15. Moreover, Plaintiff Chaka's counsel argued that the reputational damage to be considered by the D.C. Superior Court continued to affect her up to the date of the trial, Tr. at 237:17-25, ECF No. 14-9, and that Defendant Davis "picked on her. And he's been picking on her since this case ended," *id.* at 250:8-9.[7]

The D.C. Superior Court expressed confusion with the argument of Plaintiff Chaka's counsel, because it appeared that she was laying out the elements of claims for libel and slander, intentional infliction of emotional distress, and tortious interference with contract, but those claims were not made. *See id*. at 238:19–239:9; *id.* at 245:15-17 (questioning from Superior Court about Plaintiff Chaka's counsel's argument, because the argument "sound[ed] like . . . a tortious interference with contractual relationships argument – which [Plaintiff Chaka did] not have a cause of action for."). The counsel clarified that she wished to "separate the claim that is in this case from other claims that may be related to the incident that are not brought here today." *Id.* at 239:10-12.

The D.C Superior Court entered judgment for Plaintiff Chaka on September 17, 2013, in the amount of $19,761, and entered a one year injunction against Defendant Davis requiring him to stay at least seventy-five feet away from Plaintiff Chaka until September 17, 2014. FOF at 14–15.

### C. The Instant Matter

Shortly after the bench trial in the D.C. Superior Court case ("*Chaka I*"), the plaintiffs filed the instant matter before this Court. *See* Compl., ECF No. 2 (April 9, 2013). As amended, the plaintiffs raise claims for defamation, Am. Compl. ¶¶ 13–21; invasion of privacy, *id.* ¶¶ 22–

---

[7] Plaintiff Chaka's counsel's use of the word "case" appears to refer to the nightclub incident itself, not the D.C. Superior Court lawsuit.

28; tortious interference with contractual relations, *id.* ¶¶ 29–36, and intentional infliction of emotional distress, *id.* ¶¶ 37–41. While Defendant Davis' motion to dismiss was pending, the D.C. Superior Court released its findings of fact and conclusions of law in *Chaka I*, which the plaintiffs promptly filed as a supplemental memorandum in this case. *See* Suppl. Mem. Opp. Def.'s Mot. Dismiss, ECF No. 17. In light of this filing, the Court gave the parties the opportunity to file supplemental briefing regarding Defendant Davis' claim preclusion arguments. *See* Minute Order (Sept. 18, 2013).

## II. LEGAL STANDARD

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In contrast, issue preclusion, which was "once known as 'collateral estoppel' and 'direct estoppel,'" bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* at 892 and n.5 (internal quotations and citations omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (internal quotation marks and citation omitted). The Supreme Court has explained that these preclusion doctrines serve the important functions to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the

possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153-154 (1979)) (alteration in original).

Generally, a plaintiff is expected to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." *U.S. Indus., Inc. v. Blake Constr. Co., Inc.,* 765 F.2d 195, 205 (D.C. Cir. 1985) (quoting 1B J. Moore, *Moore's Federal Practice,* ¶ 0.410[1] (1983)). Under the doctrine of *res judicata* (claim preclusion), a final judgment on the merits in a prior suit involving the same parties bars subsequent suits based on the same cause of action. *See Montana,* 440 U.S. at 153; *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5, (1979). "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Apotex, Inc. v. FDA,* 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Drake v. FAA,* 291 F.3d 59, 66 (D.C. Cir. 2002)). Parties are thus prevented from relitigating in a separate proceeding "any ground for relief which they already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity," and regardless of the soundness of the earlier judgment. *Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C. Cir. 1981); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously" (citation omitted)).

## III.  DISCUSSION

Defendant Davis argues that Plaintiff "Chaka was required, and had the opportunity, to raise in *Chaka I* her claims for defamation, invasion of privacy, tortious interference and intentional infliction of emotional distress." Def.'s Mem. at 9. The plaintiffs contend that the instant suit is not based on the January 2011 incident at a D.C. nightclub, but on events "leading up to and <u>following</u> the trial in *Chaka I*, [wherein Plaintiff] Chaka learned that a campaign of lies about her and her business, [Plaintiff] Remy, persisted." Pl.'s Opp'n Def.'s Mem. ("Pl.'s

Opp'n") at 2, ECF No. 15 (emphasis in original). Moreover, the plaintiffs assert that "[t]he four claims at bar could not have been conveniently raised in the *Chaka I* complaint[;]" that the instant suit "does not raise the specter of a verdict that is inconsistent with the verdict in *Chaka I*[;]" and that finding "*res judicata* precludes this action is to find that [Plaintiff] Chaka's exercise of her legal right to file suit in *Chaka I* grants [Defendant] Davis immunity, *carte blanche*, to further harass, assault, and defame [Plaintiff] Chaka and her company." *Id.* at 4. The plaintiffs' arguments are unavailing.

First, the plaintiffs' statement of the events giving rise to the instant matter proves too much: the plaintiffs assert that they discovered the alleged "campaign of lies" *persisted* between April 2012 and May 2013. *Id.* at 2. By definition, discovering that a campaign "persisted" indicates that the campaign must have been ongoing from an earlier date and that the plaintiffs were aware of it. The testimony in *Chaka I* bears this proposition out. Plaintiff Chaka testified repeatedly that immediately after the nightclub incident, Defendant Davis began making allegedly defamatory comments to the media and others about Plaintiff Chaka; that the plaintiffs' business interests collapsed in the immediate aftermath of the incident and the resulting media coverage; that Plaintiff Chaka's privacy was violated; and that the plaintiffs' contracts were cancelled. *See* Tr. at 39:8-14, ECF No. 14-4; *id.* at 39:15–40:13; *id.* at 41:7-8; *id.* at 42:1–44:7; Tr. at 69:8-12, ECF No. 14-5.

Indeed, during Plaintiff Chaka's counsel's closing argument in *Chaka I*, in response to a question from the Superior Court about whether the plaintiff was making a claim for lost business, intentional infliction of emotional distress, defamation, and interference with contract, *see* Tr. at 238:23–239:2, ECF No. 14-9, Plaintiff Chaka's counsel stated that she wanted "to separate the claim that is in this case from *other claims that may be related to the incident that*

9

*are not brought here today*," *id.* at 239:10-12 (emphasis added). This admission in *Chaka I* further bolsters Defendant Davis' argument here that all of the claims raised in this matter could have been raised in *Chaka I* and were related to the incident at the nightclub.

The cases cited by the plaintiffs in support of their arguments support the application of *res judicata* here. In *Porter v. Shah*, 606 F.3d 809, 814 (D.C. Cir. 2010), the D.C. Circuit upheld a district court's dismissal of claims on *res judicata* grounds because, even though the plaintiff in that matter had not had any opportunity for discovery or an evidentiary hearing on his Title VII retaliation claims, he "had the opportunity to—and did—submit extensive documentary evidence" to support his claims in a previous suit. The D.C. Circuit found that, once the plaintiff had an opportunity to raise his claims—in the context of a civil contempt proceeding—the plaintiff could not have a proverbial "second bite at the apple" by raising his claims anew in a different suit. *See id.* In the instant matter, the plaintiffs were aware of the claims raised here during *Chaka I* and, in fact, testified so extensively about them in *Chaka I* that the Superior Court had to question the plaintiff's counsel on multiple occasions to determine whether those claims were, in fact, being raised in that case. *See* Tr. at 238:23–239:2, ECF No. 14-9; *id.* at 245:15-17. Although the plaintiff made clear that she was "separat[ing] the claim that is in [*Chaka I*] from other claims that may be related to the [nightclub] incident that are not brought here today," *id.* at 239:10-12, such a separation is irrelevant to the *res judicata* analysis, *see Porter*, 606 F.3d at 814 (noting *res judicata* applies when "the litigants or their privies . . . had a full and fair *opportunity* to raise the claim in an earlier proceeding." (quoting *Nixon v. United States*, 978 F.2d 1269, 1298 (D.C. Cir. 1992) (Henderson, J. concurring)) (emphasis added).[8]

---

[8] Notably, although neither party addresses it in their briefing, Plaintiff Remy is properly considered a "privy" of Plaintiff Chaka, since Plaintiff Remy is an LLC whose sole member is Plaintiff Chaka, Am. Compl. ¶ 4, and the Amended Complaint does not, in any way, differentiate the claims being raised on behalf of Plaintiff Remy from those of Plaintiff Chaka, *see generally* Am. Compl. Thus, since neither party argues that Plaintiff Remy has raised

10

Unlike in *Porter*, where the plaintiff did not have the opportunity for an evidentiary hearing on his claims but still was precluded from raising those claims in a new matter, here Plaintiff Chaka presented evidence relevant to each of her instant claims during the trial in *Chaka I*, purportedly as part of her claim for emotional distress damages in that action. *See* Tr. at 239:13-18, ECF No. 14-9.

The plaintiffs rely on *Wallace v. Skadden, Arps, Meagher, & Flom*, 715 A.2d 873, 887 (D.C. 1998), for the proposition that "'[N]othing in the rule against splitting a cause of action prevents a plaintiff from later bringing claims that . . . could not have been anticipated when the first suit was filed.'" Pls.' Opp'n at 2 (brackets in original). Although this is an exception to the application of *res judicata*, it comes with a caveat: it only applies "when evidence [of the claims at issue] . . . could not have been discovered with due diligence." *Id.* (quoting *Guerrero v. Katzen*, 774 F.2d 506, 508 (D.C. Cir. 1985)); *see also Grausz v. Englander*, 321 F.3d 467, 473–74 (4th Cir. 2003) (noting *res judicata* does not apply when the plaintiff did not know and had no reason to know of claims during previous litigation). Plaintiff Chaka presented evidence pertaining to each of the claims raised in the instant matter during *Chaka I*, *see* Part I.B. *supra*, with the exception of the tortious interference with contract claim stemming from an incident at a nightclub on December 23, 2012. That claim arose at least three months before the trial in *Chaka I* and more than eight months before the judgment. *See* Am. Compl. ¶¶ 33–35. Although some of the defendants' actions in the instant matter occurred in 2012 and 2013, *see* Am. Compl. ¶¶ 16–17, 25, 33, there is nothing in the Amended Complaint, the record, or the plaintiffs'

---

any issues or claims in this matter that could not have been raised by Plaintiff Chaka in *Chaka I*, Plaintiff Remy is similarly bound by *Chaka I* on *res judicata* grounds. *See Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) ("Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) *between the same parties or their privies*, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.") (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (internal quotation marks omitted and emphasis added); *Natural Resources Defense Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (same).

briefing to indicate why these actions "could not have been discovered with due diligence." *Wallace*, 715 A.2d at 887 (quoting *Guerrero*, 774 F.2d at 508) and raised in *Chaka I*. As Defendant Davis points out, the "Plaintiffs were clearly aware of the grounds for their . . . actions [in the instant matter] well before the judgment, trial, pretrial, or typical pretrial discovery deadlines in" *Chaka I*. Def.'s Reply Pls.' Opp'n Defs.' Suppl. Mem. Supp. Mot. Dismiss at 3, ECF No. 20. Thus, the plaintiffs have provided no reason why the lack of knowledge exception to *res judicata* should apply here.

*Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997), another case relied upon by the plaintiffs, amply illustrates why their claims are precluded here and refutes their second argument, that the claims at issue in this matter could not have been conveniently raised in *Chaka I*. Pl.'s Opp'n at 4. In *Stanton*, the D.C. Circuit examined whether a lawyer's claims relating to the procedural process by which the D.C. Court of Appeals declined to reinstate his license were barred on *res judicata* grounds because of his previous suits regarding his original suspension. *Stanton*, 127 F.3d at 74–75. The D.C. Circuit found that they did not, since the plaintiff's previous suits had been seeking to vacate his suspension from the D.C. Bar while the suit under consideration challenged procedural aspects of the plaintiff's petition for reinstatement, an entirely separate set of circumstances. *See id.* at 77. The *Stanton* court pointed out that, under the "transactional" approach to *res judicata*, any claims that arise "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose" are precluded. *Id.* at 78 (quoting *Smith v. Jenkins*, 562 A.2d 610, 613 (D.C. 1989)). The D.C. Circuit further defined a "transaction" as a grouping of factual circumstances to be determined "'pragmatically,' considering 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties expectations or business understanding and usage.'"
*Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

Here, the claims raised in the instant matter "form a convenient trial unit" with those raised in *Chaka I*. In fact, they form such a convenient trial unit that it appears evidence regarding the instant claims was actually presented in *Chaka I*. *See* Part I.B *supra*. While the court in *Stanton* found that the plaintiff's claims were not precluded because "Federal law is clear that post-judgment events give rise to new claims," *id.* at 78 (emphasis omitted), none of the claims raised in the instant matter occurred before the September 17, 2013 judgment in *Chaka I*, *see generally* Am. Compl. *Stanton*, rather than supporting the plaintiffs' contention that *res judicata* does not apply here, shows that when, as in this suit, claims represent a convenient trial unit, arise out of the same incident, and occur prior to judgment in a previous case, those claims are precluded from being raised in future suits.

The plaintiffs' reliance on *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 618 (D.C. 1999), is also misplaced. In that case, the D.C Court of Appeals held that a plaintiff's claims that were voluntarily dismissed without prejudice in a prior proceeding were nevertheless barred by *res judicata* in a new proceeding because they "might have been raised in the prior action." *Id.* In that case, the court found a fraudulent misrepresentation claim barred because it could have been raised in a prior action as a counterclaim or a defense in a previous breach of contract action. *See id.* at 618–19. The court in *Shin* further instructed that courts consider "the nature of the two actions and the facts sought to be proved in each one" in determining whether claims in a subsequent action should be precluded on *res judicata* grounds because of a prior action. *Id.* at 619 (quoting *Amos v. Shelton*, 497 A.2d 1082, 1085 (D.C. 1985)). Here, the facts sought to be proved in the instant matter were actually set forth in *Chaka I* as part of Plaintiff Chaka's

13

emotional distress claims. *See* Tr. at 239:13-18, ECF No. 14-9. Therefore, *Shin* supports Defendant Davis' argument that the instant claims could have been raised in *Chaka I* and arose out of the same transaction, precluding them from being raised here.

The plaintiffs rely on *Jackson v. District of Columbia*, 412 A.2d 948 (D.C. 1980), for the proposition that *res judicata* is not an automatic bar to subsequent claims because in that case "an earlier suit for false arrest did not bar a later suit for excessive force by the arresting officers." Pl.'s Opp'n Def.'s Suppl. Mem. Supp. Mot. Dismiss at 3, ECF No. 19. *Jackson* is inapposite since, in that case, the defendants did not raise a *res judicata* defense to the excessive force claim brought in the later suit, *see Jackson*, 412 A.2d at 955 ("The district court's opinion does not dispose of [the infliction of emotional distress and assault and battery claims] because it dealt only with the arrest."), and the law is clear that *res judicata* can be waived if the party entitled to assert it fails to do so, *see* FED. R. CIV. P. 8(c) (listing *res judicata* as affirmative defense that must be stated in a responsive pleading); *Poulin v. Bowen*, 817 F.2d 865, 869 (D.C. Cir. 1987) ("[A]ny res judicata defense was also waived by the [defendant's] failure to raise it in answer to [the plaintiff's] complaint."). Since, in *Jackson*, the *res judicata* defense was not raised with regard to the later charges,—the claims were instead dismissed for failure to state a claim, *Jackson*, 412 A.2d at 956–57—that case is inapposite to the instant matter, where the *res judicata* defense has been pursued by Defendant Davis since the outset of this litigation.

*Molovinsky v. Monterey Co-op, Inc.*, 689 A.2d 531, 533 (D.C. 1996), and *Montana*, similarly offer no help for the plaintiffs, despite their reliance on these cases. *Molovinsky* states only that "a final judgment on the merits embodies all of a party's rights arising out of the transaction involved, and precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the

issues were raised in the first trial." *Molovinsky*, 689 A.2d at 533 (internal quotation marks and citations omitted). The situation described in *Molovinsky* is exactly the case here: the instant claims arise out of the same transaction—the incident at the nightclub and the subsequent media coverage—that was adjudged in *Chaka I*. *Montana*, which the plaintiffs cite for the proposition that a court should not apply *res judicata* when there is no danger of inconsistent verdicts, states only that such inconsistent verdicts are one of several reasons that the doctrine exists. 440 U.S. at 153–54. Indeed, *Montana* notes that the doctrine also "conserves judicial resources" and "fosters reliance on judicial action," two factors that would be advanced by the application of *res judicata* here, since the plaintiffs have already had a "full and fair opportunity to litigate" their claims in *Chaka I*. *See id.* Preclusion here would save judicial resources by avoiding another trial when these claims could have been raised in *Chaka I*, and encourages reliance on judicial action by not disturbing the ruling in *Chaka I*, which was predicated on the events surrounding the same incident at issue here.

Finally, the plaintiffs' argument that applying *res judicata* to the instant matter would somehow give Defendant Davis "*carte blanche*[] to further harass, assault, and defame [Plaintiff] Chaka and her company," Pl.'s Opp'n at 4, an argument made without citing to any legal authority, fails on its face. If Defendant Davis were to commit any of the acts outlined by the plaintiffs, it is conceivable that Defendant Davis could be found in violation of the permanent injunction entered in *Chaka I* or those actions could give rise to a new suit. What matters for this case is whether the plaintiffs have demonstrated that the Amended Complaint raises claims that *could not* have been brought, assuming due diligence on the part of the plaintiffs, in *Chaka I*. As described *supra*, the plaintiffs have not done so.

## IV. CONCLUSION

For the foregoing reasons, Defendant Davis' motion to dismiss the amended complaint on *res judicata* grounds is granted, since all the claims in the instant matter arise from the same transaction that gave rise to *Chaka I* and could have been litigated in *Chaka I*. Since the Court's finding is dispositive as to the entire matter against Defendant Davis, it need not reach Defendant Davis' other arguments regarding the applicable statute of limitations or the alleged failure to state a claim. Moreover, in the absence of any service of the Amended Complaint on the Doe defendants within 120 days of filing the Amended Complaint, the entire action is dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.


Date: March 13, 2014

_____
BERYL A. HOWELL
United States District Judge